**HOWCROFT, Appellant,**

v.

**HOWCROFT, Appellee.**

[Cite as *Howcroft v. Howcroft*, 192 Ohio App.3d 307, 2010-Ohio-6410.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 2010 CA 25.

Decided Dec. 17, 2010.

308

James R. Kingsley, for appellant.

Deborah Douglas Barrington, for appellee.

DELANEY, Judge.

{¶ 1} Plaintiff-appellant, Fred A. Howcroft, appeals the April 9, 2010 and April 22, 2010 judgment entries of the Fairfield County Court of Common Pleas, Domestic Relations Division.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} Plaintiff-appellant, Fred A. Howcroft, and defendant-appellee, Wanda J. Howcroft, married on February 13, 1993. No children were born as issue of the marriage. The marriage was a second marriage for appellant and a third marriage for appellee. Appellant was born on February 10, 1941. At the time of the divorce, appellant was 68 years old. Appellee was born on October 18, 1952. At the time of the divorce, appellee was 57 years old.

{¶ 3} Appellant's first divorce was final on December 23, 1989. As part of the divorce, appellant's first wife paid appellant for his portion of the marital residence, in the amount of $29,000. On June 29, 1991, appellant used the $29,000 as a down payment to purchase a house in Stoutsville, Ohio, for $82,000. Appellant purchased the home in his name only.

{¶ 4} In 1991, appellant and appellee moved in together at the Stoutsville home. As stated above, appellant and appellee were married in 1993. The Stoutsville home was the marital residence.

{¶ 5} At the time of the marriage, appellant was employed as a schoolteacher. He had been a teacher for 41 years before retiring from the profession in 2004. Appellant draws pension benefits in the amount of $4,436.43 gross per month. After deductions, including health insurance for the parties, his net benefit was $3,187.36. Prior to marriage and relevant to this appeal, appellant owned a tax-sheltered annuity opened under Section 403(B), Title 26, U.S.Code, and a Prudential account worth $29,324.67 on June 30, 1993. Appellant rolled the funds into a Raymond James individual retirement account ("IRA") valued at $69,127.46 in 2009. Appellant contributed $100 per month to the Raymond James IRA until 2004.

{¶ 6} The parties lived a frugal lifestyle. They had minimal living and entertainment expenses.

{¶ 7} Appellee had a high school education, and she was previously employed as an administrator in a medical office. On August 25, 1996, appellee suffered a stroke. Appellee recovered from the stroke but suffered residual effects such as speech aphasia, difficulty writing, and problems concentrating and multitasking. After the stroke, appellant took off a semester from his teaching position to assist

appellee with her recovery. Appellant told appellee that she did not have to return to work after her stroke. Appellee has not earned an income since 1997.

{¶ 8} After appellee's stroke, appellant stated that he moved to another bedroom to sleep.

{¶ 9} In 1997, appellant transferred an interest in the Stoutsville home to appellee. A survivorship deed granting appellant and appellee one-half interest in the Stoutsville home was recorded on May 8, 1997. Appellant stated that he transferred a one-half interest in the home to appellee for estate-planning purposes only in that he wanted the house to go to appellee if he died. He was not considering divorce at the time of the transfer. Appellant refinanced the home in 1998. At the time of the refinance, the home was appraised at $118,000. In 2008, the home was appraised at $135,000. In 2009, the mortgage payoff amount was $17,038.18.

{¶ 10} In 2003, appellant was diagnosed with prostate cancer. He received radiation treatment to combat the cancer. At that time, appellant stated that he moved to the basement of their home. Appellee testified that while appellant slept in different rooms, she often slept with him in whichever room he was sleeping. Appellant states that by 2003, the parties had ceased communicating directly and communicated only through notes. Appellant states that appellee was not completing her "wifely duties," such as cleaning the home and cooking meals. The parties still engaged in sexual relations.

{¶ 11} Appellant filed a complaint for divorce on August 30, 2007. Appellant did not vacate the marital residence until December 2008. In February 2008, appellant delivered two wedding-anniversary cards to appellee, and the parties engaged in sexual relations.

{¶ 12} There was no temporary spousal support ordered during the pendency of the divorce because the parties were still residing in the same home. In order to meet her living expenses, appellee used an AT & T Universal credit card that the court ordered be paid by appellant.

{¶ 13} The matter came on for hearing before the magistrate on April 16, 2009. The magistrate issued her decision on September 4, 2009. The magistrate made the following findings:

{¶ 14} "The Magistrate finds that the duration of the marriage is February 14, 1993 until April 16, 2009. O.R.C. 3105.171(A)(2)(a).

{¶ 15} " * * *

{¶ 16} "The Magistrate finds that the Plaintiff has traced $30,000 separate property contribution in the real estate [marital residence]. The Magistrate finds that the remaining value of the real estate is a marital asset subject to division.

{¶ 17} " * * *

{¶ 18} "From the evidence presented, the Magistrate finds that the Raymond James IRA account is both separate and marital. The Plaintiff's separate property portion of the Raymond James IRA is valued at $29,324.67. The remaining balance of the Raymond James IRA is marital property subject to division.

{¶ 19} " * * *

{¶ 20} "The Magistrate finds that the debts to the AT & T Universal card, the Kohls card and the Sears card are marital in nature.

{¶ 21} " * * *

{¶ 22} "The Magistrate finds, based on the evidence presented, that the Defendant is unable to return to her prior employment. However, the evidence was insufficient to determine that the Defendant is completely disabled and unable to work. For purposes of determining spousal support, the Magistrate finds that the Defendant is capable of earning at the most a minimum wage income based on the evidence presented.

{¶ 23} " * * *

{¶ 24} "Based on the foregoing findings, the Magistrate finds that it is reasonable and appropriate to order the Plaintiff to pay spousal support to the Defendant in the amount of $1250.00 per month, plus processing charge. * * * The spousal support ordered shall continue for an indefinite duration, but shall terminate upon the death of either party, the marriage of the Defendant, or the cohabitation of the Defendant with an unrelated male."

{¶ 25} Appellant filed objections to the magistrate's decision. On April 9, 2010, the trial court overruled appellant's objections and adopted the magistrate's decision. The final decree of divorce was filed on April 22, 2010.

{¶ 26} It is from these decisions that appellant now appeals.

## ASSIGNMENTS OF ERROR

{¶ 27} Appellant raises seven assignments of error:

{¶ 28} "I. What is required of a magistrate in rendering a decision?

{¶ 29} "II. What standard of review is imposed upon the trial judge in reviewing objections to a magistrate's decision?

{¶ 30} "III. Did the trial court err/abuse its discretion when it found the duration of the marriage to be from February 13, 1993 through the date of trial, April 16, 2009?

{¶ 31} "IV. Did the trial court err/abuse its discretion when it found the residence at 10420 Sixteenth Road, Stoutsville, Ohio to be marital property and awarded wife one-half (1/2) of its fair market value over $30,000.00 traced to appellant?

{¶ 32} "V. Did the trial court err/abuse its discretion by ordering spousal support in the amount of $1250.00 per month for an indefinite duration?

{¶ 33} "VI. Did the trial court err/abuse its discretion when it found more than $13,000.00 of the Raymond James IRA was marital?

{¶ 34} "VII. Did the trial court err in requiring plaintiff to pay the AT & T Universal card in its entirety?"

## I

{¶ 35} Appellant argues in his first assignment of error that the magistrate's decision was insufficient for the trial court to independently analyze the conclusions reached by the magistrate. We disagree.

{¶ 36} Appellant states that the magistrate's decision contains no facts to support the magistrate's conclusions. The magistrate's decision consists of 77 findings of fact. We have reviewed the transcript of the trial held before the magistrate on April 16, 2009, and we find that the magistrate's findings of fact accurately represent the evidence elucidated at the one-day trial.

{¶ 37} Appellant's first assignment of error is overruled.

## II

{¶ 38} Appellant contends in his second assignment of error that the trial court failed to conduct an independent analysis of the magistrate's decision pursuant to Civ.R. 53. We disagree.

{¶ 39} Civ.R. 53(D) regulates proceedings before magistrates. Civ.R. 53(D)(4)(d) states: "If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate."

{¶ 40} The trial court filed its judgment entry overruling appellant's objections on April 9, 2010. The judgment entry stated that the trial court reviewed the magistrate's decision and the transcript of the hearing. The trial court deter-

mined the magistrate's decision was well reasoned and based upon sufficient, credible evidence. The trial court further found that the magistrate found appellee to be more credible than appellant.

{¶ 41} Appellant argues that the judgment entry shows that the trial court failed to engage in an independent review of the objections. Appellant relies on *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807, for the proposition that a trial court may not "rubber stamp" a magistrate's decision. *Nolte* held that a trial court judge cannot adopt a magistrate's decision unless he or she has independently analyzed the case and cannot do so unless the magistrate's decision contains findings of facts to support the basis of the magistrate's conclusions.

{¶ 42} As we found above, the magistrate's decision contained 77 findings of fact that accurately represented the evidence presented at trial. These findings of fact were sufficient to allow the trial court to independently analyze the magistrate's conclusions so it could rule upon appellant's objections under Civ.R. 53(D)(4)(d).

{¶ 43} Appellant's second assignment of error is overruled.

### III

{¶ 44} In appellant's third assignment of error, appellant states that the trial court abused its discretion in determining the termination date of the parties' marriage to be April 16, 2009, the date of trial. We disagree.

{¶ 45} R.C. 3105.171(A)(2) provides that except when the court determines that it would be inequitable, the date of the final hearing is usually the date of termination of the marriage. *Combs v. Combs,* Stark App. No. 2008CA00169, 2009-Ohio-1683, 2009 WL 943965, ¶ 21. Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, for purposes of the division of marital property, is the date of the final divorce hearing. *Bowen v. Bowen* (1999), 132 Ohio App.3d 616, 630, 725 N.E.2d 1165. However, the trial court has broad discretion in choosing the appropriate marriage-termination date, and this decision cannot be disturbed on appeal absent an abuse of discretion. See *Berish v. Berish* (1982), 69 Ohio St.2d 318, 321, 23 O.O.3d 296, 432 N.E.2d 183.

{¶ 46} R.C. 3105.171 establishes an alternative date for determining what is marital property:

{¶ 47} "(A) As used in this section:

{¶ 48} " * * *

{¶ 49} "(2) 'During the marriage' means whichever of the following is applicable:

{¶ 50} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

{¶ 51} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court."

{¶ 52} Courts, however, should be reluctant to use a de facto termination of marriage date unless the evidence clearly and bilaterally shows that it is appropriate based on the totality of the circumstances. *Boggs v. Boggs,* Delaware App. No. 07 CAF 02 0014, 2008-Ohio-1411, 2008 WL 795305, ¶ 66, citing *Day v. Day* (1988), 40 Ohio App.3d 155, 158, 532 N.E.2d 201; *Stafinsky v. Stafinsky* (1996), 116 Ohio App.3d 781, 689 N.E.2d 112; *Schneider v. Schneider* (1996), 110 Ohio App.3d 487, 674 N.E.2d 769.

{¶ 53} Generally, the trial court has broad discretion in choosing the appropriate marriage-termination date, and this decision cannot be disturbed on appeal absent an abuse of discretion. *Boggs,* citing *Berish v. Berish,* 69 Ohio St.2d 318, 321, 23 O.O.3d 296, 432 N.E.2d 183. "The abuse-of-discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case." *Jefferies v. Stanzak* (1999), 135 Ohio App.3d 176, 179, 733 N.E.2d 305, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Therefore, in order to find an abuse of discretion, there must be a determination that the trial court's judgment is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 54} Upon review of the transcript in this case, we cannot find that the trial court abused its discretion in selecting the appropriate marriage-termination date as April 16, 2009. While appellant argues that the marriage was over in 1995 when appellant moved to the second bedroom, or in 2003 when appellant moved to the basement, under the facts and circumstances of this case, we find that there was contrary evidence presented that the parties still engaged in a relationship as late as 2008, after appellant filed his complaint for divorce.

{¶ 55} Appellant's third assignment of error is overruled.

## IV

{¶ 56} Appellant argues in his fourth and sixth assignments of error that the trial court abused its discretion in determining the status of certain property as separate or marital. Specifically, appellant states that the trial court erred when it designated the Stoutsville home and the Raymond James IRA as marital property.

{¶ 57} The characterization of property as separate or marital is a mixed question of law and fact, and the trial court's ruling must be supported by sufficient credible evidence. *Globokar v. Globokar*, Stark App. No. 2009CA00138, 2010-Ohio-1737, 2010 WL 1553564, ¶ 13, citing *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989. The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. We will not reverse the trial court's judgment as being against the manifest weight of the evidence if some competent, credible evidence supports the court's judgment. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 58} However, even if the court has determined that property is separate, it has discretion to distribute the property as it deems equitable. *Lee v. Lee*, Licking App. No. 2008CA112, 2009-Ohio-5250, 2009 WL 3155054, ¶ 85–87, citing *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293. Accordingly, an appellate court is limited to a determination of whether, under the totality of the circumstances, the trial court abused its discretion in dividing the property. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597.

{¶ 59} R.C. 3105.171(A)(3)(a) defines "marital property" as:

{¶ 60} "(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

{¶ 61} "(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

{¶ 62} "(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage."

{¶ 63} R.C. 3105.171(A)(6)(a) defines separate property as "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."

{¶ 64} However, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."  R.C. 3105.171(A)(6)(b).  Therefore, traceability is central when determining whether separate property has "lost its separate character" after being commingled with marital property.  *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734, 645 N.E.2d 1300.

## A.  STOUTSVILLE HOME

{¶ 65} Appellant first argues that the trial court erred in designating the Stoutsville home as marital property.  We agree.

{¶ 66} There is no dispute that at the time appellant purchased the Stoutsville home it was separate and premarital property.  Appellant used $29,000 received from his previous home as the down payment on the Stoutsville home.  The parties moved into the home together in 1991 and were married in 1993.  On May 8, 1997, appellant executed a survivorship deed giving appellee one-half interest in the Stoutsville home.  Appellant testified at trial as to the transfer of the interest:

{¶ 67} "Q. What events were going on in your life approximately this time that prompted you to deed this property to Wanda in survivorship?

{¶ 68} "A. Wanda had a stroke and I thought if anything happened to me and I got killed or anything like that, I would like to have the house go to her if I died.

{¶ 69} " * * *

{¶ 70} "A. I wanted the house, if I died, to go to Wanda.

{¶ 71} "Q. All right.  Now, when you said that to yourself, were you intending that for all purposes, if she divorced you, as well as if you died, or just if you died?

{¶ 72} " * * *

{¶ 73} "A. I never thought of a divorce.

{¶ 74} "Q. What was—what was the intended purpose, other than refinancing, to give the house to her?

{¶ 75} "A. In case I died, then she would have a house.

{¶ 76} "Q. All right.

{¶ 77} "A. I never even thought of a divorce at that time.

{¶ 78} " * * *

{¶ 79} "Q. Did you tell Wanda that you were doing this?

{¶ 80} "A. Yes.

{¶ 81} "Q. All right.

{¶ 82} "A. Yes. She knew I was doing this and why."

{¶ 83} The transcript shows that appellee gave no testimony or evidence about appellant's transfer of one-half of his interest in the Stoutsville home.

{¶ 84} The trial court determined that regardless of appellant's donative intent as being defined for estate-planning purposes, appellant's transfer of one-half interest in the Stoutsville home was an immediate gift to appellee, therefore rendering the Stoutsville home marital property. The trial court traced $30,000, the approximate value of the down payment on the Stoutsville home, as appellant's separate property.

{¶ 85} A spouse can convert separate property into marital property by making an inter vivos gift to his or her spouse. *Helton v. Helton* (1996), 114 Ohio App.3d 683, 685, 683 N.E.2d 1157. To prove that an inter vivos gift has been made, the following elements are required: (1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it. Id. at 685–686.

{¶ 86} "The donee has the burden of showing by clear and convincing evidence that the donor made an *inter vivos* gift." Id. at 686, 683 N.E.2d 1157. Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus.

{¶ 87} The fact that both parties' names are on the deed is not determinative of whether the property is marital or separate, but such evidence may be considered on the issue. R.C. 3105.171(H) and *Gibson v. Gibson,* Tuscarawas App. No. 2006 AP 01 0009, 2007-Ohio-2087, 2007 WL 1248424. See also *Gearhart v. Gearhart,* Richland App. No. 2007CA0026, 2008-Ohio-23, 2008 WL 62286 (finding that the execution of a joint-survivorship deed and the testimony of the donor husband that half of the property was to be given to the donee wife as a result of the transfer, without any limitation or restriction, supported the trial court's decision that the transfer of interest in the property was an inter vivos gift).

{¶ 88} A review of the record in this case results in a different conclusion than that reached by the trial court or our decision in *Gearhart.* In this case, appellant testified that he made the transfer of the property for estate-planning purposes so that appellee would have a future expectancy interest in the property, as opposed to a present possessory interest. It was the appellee's burden to show by clear and convincing evidence a donative intent on the part of appellant. A review of the record shows that appellee provided no evidence that appellant's transfer of the proper was an inter vivos gift. See *Smith v. Smith,* Muskingum App. Nos. CT2003–0008 and CT2003–0020, 2004-Ohio-408, 2004 WL 193041 (wife failed to show donative intent on the husband's part when the wife's name was placed on deeds).

{¶ 89} Because appellee failed to meet her evidentiary burden on this issue, we find that the trial court abused its discretion in holding that the Stoutsville home was marital property rather than separate property.

{¶ 90} Appellant's fourth assignment of error is sustained.

## B. RAYMOND JAMES IRA

{¶ 91} Appellant argues in his sixth assignment of error that the trial court erred in finding that the marital portion of the Raymond James IRA exceeded $13,200. We disagree.

{¶ 92} Appellant argues that the valuation of the account was affected by the trial court's erroneous determination of the termination date of the marriage. As we found in appellant's third assignment of error, the trial court correctly found the termination date of the marriage to be April 16, 2009.

{¶ 93} A review of the record shows no error in the trial court's determination of the marital and separate value of the Raymond James IRA.

{¶ 94} Appellant's sixth assignment of error is overruled.

## V

{¶ 95} Appellant argues in his fifth assignment of error that the trial court abused its discretion in awarding appellee indefinite spousal support in the amount of $1,250 per month. We disagree.

{¶ 96} Pursuant to R.C. 3105.18(B), a trial court may award reasonable spousal support to either party upon request and after the court determines the division or disbursement of property under R.C. 3105.171.

{¶ 97} In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and duration of

spousal support, R.C. 3105.18(C)(1) directs the trial court to consider all 14 factors set forth therein:

{¶ 98} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

{¶ 99} "(b) The relative earning abilities of the parties;

{¶ 100} "(c) The ages and the physical, mental, and emotional conditions of the parties;

{¶ 101} "(d) The retirement benefits of the parties;

{¶ 102} "(e) The duration of the marriage;

{¶ 103} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

{¶ 104} "(g) The standard of living of the parties established during the marriage;

{¶ 105} "(h) The relative extent of education of the parties;

{¶ 106} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

{¶ 107} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

{¶ 108} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

{¶ 109} "(l) The tax consequences, for each party, of an award of spousal support;

{¶ 110} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

{¶ 111} "(n) Any other factor that the court expressly finds to be relevant and equitable."

{¶ 112} In addition, R.C. 3105.18(C)(2) states that in determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.

{¶ 113} Trial courts must consider all the factors listed in R.C. 3105.18(C). However, this court has previously held that a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C), and we may not assume that the evidence was not considered. *Hutta v. Hutta,* 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282, ¶ 27, citing *Clendening v. Clendening,* Stark App. No. 2005CA00086, 2005-Ohio-6298, 2005 WL 3150321, at ¶ 16, citing *Barron v. Barron,* Stark App. No. 2002CA00239, 2003-Ohio-649, 2003 WL 294353. The trial court need set forth only sufficient detail to enable a reviewing court to determine the appropriateness of the award. Id., citing *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197.

{¶ 114} As an initial matter, we find that the trial court's decision includes sufficient information regarding the 14 factors to enable us to assess whether the award is fair, equitable, and in accordance with the law. We note that an award of spousal support will be reversed on appeal only if an abuse of discretion is shown. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 24, 550 N.E.2d 178. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or capricious. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. A reviewing court may not substitute its judgment for that of the trial court unless, considering the totality of circumstances, the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597.

{¶ 115} Upon the evidence presented in the record, we can find no abuse of the trial court's discretion in determining the spousal-support award. The Ohio Supreme Court held in *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, at paragraph one of the syllabus: "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities."

{¶ 116} This case does not involve a long-term marriage; however, there are other circumstances in this case to support the trial court's decision as to the amount and duration of spousal support. The trial testimony from appellant and appellee showed that when appellee suffered her stroke in 1996, it was sufficiently severe that appellant took off a semester from his teaching position to care for appellee. Appellant testified that he felt after the stroke that appellee could not return to work. Appellee has not earned an income and has been financially reliant upon appellant since 1997.

{¶ 117} The trial court imputed a minimum-wage income to appellee. After the divorce, appellee will be responsible for her own health insurance.

{¶ 118} Appellant argues in his brief that at the age of 68, "he will be not be living much longer" and he should be allowed to enjoy the last years of his life with what little he earned. There was no evidence at trial to point to appellant's near demise, but there was sufficient evidence to support the trial court's decision on spousal support. We find that the trial court considered the factors listed in R.C. 3105.18(C) and did not abuse its discretion in determining spousal support as to the amount and indefinite duration.

{¶ 119} Appellant's fifth assignment of error is overruled.

## VI

{¶ 120} Appellant argues in his final assignment of error that he should not be responsible for charges incurred on the AT & T Universal card during the pendency of the divorce. During the pendency of the divorce, the trial court did not award temporary spousal support. Appellee used the AT & T Universal card for her living expenses and the trial court had ordered that appellant be responsible for the card during that time.

{¶ 121} In the magistrate's decision as adopted by the trial court, the trial court found the debts on the AT & T Universal card to be marital in nature and ordered appellant to pay and hold appellant harmless on the card with a balance of $14,538.38. The trial court further ordered that the account be closed and any further charges after the date of the magistrate's decision be divided equally between the parties.

{¶ 122} Upon review of the evidence presented, we cannot find that the trial court abused its discretion in its evaluation of the marital debt. Further, appellant's argument in his brief on this issue extends the brief beyond 30 pages to the 31st page. Pursuant to Local App.R. 9(C), appellant's brief is not to exceed 30 pages unless upon a motion requesting an increase in the number of pages and good cause shown. The record shows that no such motion was made.

{¶ 123} Appellant's seventh assignment of error is overruled.

{¶ 124} Accordingly, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

FARMER, P.J., and WISE, J., concur.