[Cite as *Mass v. Mass*, 2017-Ohio-9049.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

DENISE MASS,                          )         CASE NO. 17 BE 0004
                                      )
                                      )
        PLAINTIFF-APPELLANT,          )
                                      )
VS.                                   )         OPINION
                                      )
ROBERT MASS,                          )
                                      )
        DEFENDANT-APPELLEE.           )

CHARACTER OF PROCEEDINGS:             Civil Appeal from the Court of Common
                                      Pleas of Belmont County, Ohio
                                      Case No. 15-DR-50

JUDGMENT:                             Affirmed.

APPEARANCES:

For Plaintiff-Appellant:              Atty. Francesca T. Carinci
                                      Suite 904-911, Sinclair Building
                                      100 North Fourth Street
                                      Steubenville, Ohio 43952

For Defendant-Appellee:               Atty. Albert E. Davies
                                      Myser &  Davies
                                      320 Howard Street
                                      Bridgeport, Ohio 43912

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                      Dated:  December 13, 2017

[Cite as *Mass v. Mass*, 2017-Ohio-9049.]
ROBB, P.J.

{¶1} Appellant Denise Mass appeals the decision of the Belmont County Common Pleas Court in her divorce action against Appellee Robert Mass. The parties entered a partial agreement and submitted only two issues for trial: the status of the husband's premarital residence after he executed a joint and survivorship deed and spousal support. First, the court found the residence owned by the husband prior to marriage was not converted to marital property by the joint and survivorship deed he executed. Second, the court declined to grant spousal support to the wife. As the trial court has broad discretion on such matters, this court affirms the trial court's decision.

STATEMENT OF THE CASE

{¶2} The husband's uncle transferred property containing a residence in Bellaire, Ohio to the husband in a deed recorded May 22, 1980. (Jt. Ex. 1). No liens encumbered the property. The parties were married in May 1983. They lived in the residence throughout the marriage raising two children in the home. A deed was recorded on October 6, 1993, wherein the husband transferred the property to himself and the wife, joint and survivor. (Jt.Ex. 2). After nearly 32 years of marriage, a complaint for divorce was filed in February 2015; both parties were turning 60 that year.

{¶3} At the September 2015 hearing, the parties recited their partial agreement into the record. This agreement, memorialized in a March 9, 2016 entry, provided the husband would pay the wife $67,772.70 representing one-half of the agreed value of the marital portion of his Ohio Public Employee Retirement Services account. Although the account was in payout status as the husband had retired, the wife agreed to a cash payment instead of division of the monthly payment. The husband also paid the wife $7,500 for her half of a parcel of marital property located next to the residence and containing a detached garage and $3,000 for her share of another property as she was one of four names on the deed. The husband's payment was to be reduced by the amount the wife spent when she took $125,000 in cash (half of the husband's separate property inheritance) from a safe deposit box

and returned all of it except $6,000. Split evenly were shares of a corporate stock and two bank accounts. They agreed to evenly divide the distributions from the husband's Deferred Compensation account and the husband's IRA, allowing him to offset the distributions by one-half of the value of the wife's profit-sharing plan. The wife received a 2011 Cadillac CTS, and the husband received a 2006 GMC Denali, a 1994 Chevrolet Cavalier, and a 1975 pick-up truck. There were no marital debts to divide.

{¶4} The hearing proceeded on the two remaining issues: the status of the residence as marital or separate property and spousal support. (Tr. 3, 11). The parties agreed the value of the residence was $73,500 as set forth in the appraisal. (Jt.Ex. 3). On February 1, 2016, the magistrate issued a decision, signed by the trial court, addressing the two contested issues. The magistrate found the residence was the husband's separate property as the husband did not have the requisite intent to gift a one-half interest to the wife when he signed the joint and survivorship deed. However, the magistrate found the wife had a marital interest in the property due to improvements made during the marriage using marital funds and labor.[1] The magistrate awarded the wife 20% of the $73,500 appraised value, which was $14,700. The magistrate said this figure represented the value of the improvements and appreciation on the improvements.

{¶5} As to spousal support, the wife asked for $1,500 per month for life with retained jurisdiction. The magistrate found spousal support was not reasonable or appropriate and did not retain jurisdiction. The magistrate made various findings regarding the statutory factors: both parties were 60 years old; the wife's annual income was $18,000; the husband's income from his retirement accounts was

---

[1] Some improvements were made by the husband before marriage, and some were made during the marriage. Although marital labor was used for the latter improvements, there was no testimony the funds expended were marital. Both parties testified the husband expanded the attic roof to make bedrooms. (Tr. 21, 84). The wife stated the husband installed new siding and brickwork. The wife also said the husband constructed a detached garage. (Tr. 21). Before trial, the wife's attorney informed the magistrate the neighboring lot containing a garage was appraised at $15,000. Under the parties' agreement, the husband paid the wife $7,500 for her half of the "garage property." (Tr. 7-8, 12). From the appraisal of the residence, it appears a one-car detached garage was also constructed on the property containing the residence.

$52,000; the wife could make more if she worked full-time; the wife's education level was a high school graduate; the wife was diagnosed with multiple sclerosis but was in remission; the wife was entitled to Social Security in the amount of $600 per month at age 62 or $1,200 per month at age 65; each party will receive $350 a month from the husband's Deferred Compensation account; the wife will receive $67,772.70 cash instead of monthly payments from the husband's OPERS account; the husband must pay tax on his monthly OPERS distributions, but the wife need not pay tax on the cash payment from the husband; the husband has a separate inheritance but used some of it to pay the wife under the property settlement; and the parties each received half of the individual stock shares and marital accounts.

{¶6} The wife filed timely objections. In pertinent part, she protested the failure to award her spousal support or half of the residence which she insisted was marital property due to the husband's transfer of the property into their joint names.

{¶7} The husband filed a timely objection as well. He argued the wife should not receive 20% of the $73,500 agreed value of the residence as there was no evidence to support the conclusion the residence increased in value or increased in value by this amount as a result of improvements made during the marriage, citing *Harrington v. Harrington*, 4th Dist. No. 08CA6, 2008-Ohio-6888, ¶ 18 (where farm was wife's separate property, it was husband's "burden to prove both that an increase in value occurred and that it was due to his labor, money or in-kind contribution").[2]

{¶8} On September 28, 2016, the trial court overruled the wife's objections and sustained the husband's objection. The trial court found the magistrate's decision on spousal support was appropriate based on the evidence as to the statutory factors in R.C. 3105.18(C)(1). Regarding the residence, the court found the

---

[2] *Harrington* relied on a Supreme Court case holding the increase in value on premarital property can be classified as marital property "if there is some competent, credible evidence that there was an increase in the value of the [premarital property] during the marriage and that the increase in the valuation was due to labor, money, or in-kind contributions" of one or both the spouses. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 696 N.E.2d 575 (1998) (where evidence showed the amount of appreciation on separate property since the date of the marriage and showed the appreciation was due to labor, money, or in-kind contribution during marriage).

husband's transfer during the marriage did not destroy the characterization of the property as premarital, separate property, stating the magistrate's factual findings and legal citations supported this conclusion.

**{¶9}** As to the marital labor used to make improvements to the residence, the court found no support for finding the wife should be awarded $14,700, the entire amount of the magistrate's valuation of appreciation from improvements. Agreeing with the husband's objection, the trial court concluded the wife did not offer sufficient evidence of actual appreciation to the value of the premarital property, show it was caused by marital labor, or show it equated to the amount chosen by the magistrate (as opposed to inflation or change in market valuation).[3]

**{¶10}** On January 12, 2016, the trial court attempted to enter a final decree of divorce. The wife appealed on January 24, 2016 and filed her brief on February 10, 2016. This court remanded the case to the trial court to enter a final decree of divorce. On March 3, 2017, the trial court issued a final decree of divorce, consolidating the prior orders and reciting the division of property, the magistrate's decision, and the court's ruling on the objections. The notice of appeal was amended to include this entry. The husband filed his brief in June 2017.

<u>ASSIGNMENT OF ERROR ONE: SEPARATE PROPERTY</u>

**{¶11}** The wife sets forth two assignments of error corresponding to the two contested issues below. The first assignment of error provides:

"THE COURT ERRED IN FINDING THAT THE MARITAL RESIDENCE WAS THE APPELLEE'S SEPARATE PROPERTY AND SHOULD HAVE AWARDED THE APPELLANT ONE HALF INTEREST IN THE MARITAL REAL ESTATE."

**{¶12}** The wife argues the husband's separate property owned prior to marriage transmuted into marital property by way of an inter vivos gift. The wife argues the husband had the requisite donative intent to gift half of the residence to her when he executed the joint and survivorship deed. She relies on *Wolf-Sabatino* for the proposition that a transfer for a specific purpose other than ownership demonstrates donative intent. In suggesting the court abused its discretion by finding

the husband lacked donative intent when he executed the deed, she states it was not believable that his intent was estate planning for their children because adding the wife's name to the deed would not ensure his children received the property. She notes she would have inherited the house by operation of law without the deed, and he should have made a trust if his intent was to give the children an interest. She observes: he executed the deed 10 years after the marriage; they were young with young children; and they lived in the residence for their entire marriage (over 30 years). As to any suggestion that he did not relinquish control after the deed execution, she states this would be a ridiculous observation as the alleged gift was only a half-interest and they lived together as a married couple.

{¶13} The husband notes it is undisputed the residence was his premarital property. He states his execution of a joint and survivorship deed is not conclusive evidence on whether property is marital or separate as the title of property does not determine its character under R.C. 3105.171(H). He concludes it was within the trial court's discretion to conclude he lacked the requisite donative intent to bestow a gift upon the wife and to believe the husband thought it was appropriate to put the property in their joint names with survivorship in order to provide for the children in case he died, citing *Sweeney*. He notes he never advised his wife he was making a gift (and he never relinquished ownership, dominion, or control).

{¶14} "[T]he court shall disburse a spouse's separate property to that spouse" unless an exception applies.[4] R.C. 3105.171(D). In order to disburse property, the court must "determine what constitutes marital property and what constitutes separate property." R.C. 3105.171(B). Marital property is defined in division (A)(3)(a) of R.C. 3105.171, and the definitions are subject to division (A)(3)(b), which states marital property does not include any separate property. The definition of

---

[3] This decision on improvements to the separate property during marriage is not raised on appeal.

[4] One exception is where the court makes "a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome." R.C. 3105.171(E)(2). Here, the parties agreed the husband would use part of his separate property inheritance to pay the wife for her share of the agreed value of the husband's OPERS. We note all real and personal property and any

marital property includes: "All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage[.]" R.C. 3105.171(A)(3)(a)(i). *See also* R.C. 3105.171(A)(3)(a)(ii) (current "interest" in real or personal property that was acquired during marriage). All income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage is marital property, except as otherwise provided in the statute. R.C. 3105.171(A)(3)(a)(iii).

{¶15} Separate property is also statutorily defined. R.C. 3105.171(A)(6)(a)(i)-(vii). Separate property includes: any real property or interest in real property acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). Passive income and appreciation acquired from separate property by one spouse during the marriage is also separate property. R.C. 3105.171(A)(6)(a)(iii). Transmutation is a term describing the process by which separate property changes to marital property (or vice versa). This transmutation can occur by gift. Nevertheless, the statute controls. For instance: "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶16} Most notably: "Except as otherwise provided in this section, *the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property.*" (Emphasis added.) R.C. 3105.171(H). It has been observed that a rule resulting in a gift to one spouse every time property is titled jointly was rejected as it would inappropriately encourage newly married couples to isolate separate property and to plan for the potential of a future divorce, which could have a detrimental

---

interest in real or personal property that is found by the court to be an inheritance of one spouse during the marriage is separate property. R.C. 3105.171(A)(6)(a)(i).

impact on the marital relationship. *See Kahn v. Kahn,* 42 Ohio App.3d 61, 65-66, 536 N.E.2d 678 (2d Dist.1987).

{¶17} The wife claims the husband made a gift when he executed the joint and survivorship deed. Notwithstanding the application of the domestic relations statute, the parties cite appellate cases applying inter vivos gift law to spouses and requiring donative intent by a spouse who adds the other spouse's name to a deed for premarital property. The wife recognizes "[t]he burden of showing that an inter vivos gift was made is on the donee by clear and convincing evidence." *In re Fife's Estate*, 164 Ohio St. 449, 456, 132 N.E.2d 185 (1956). *See also Hippely v. Hippely*, 7th Dist. No. 01 CO 14, 2002-Ohio-3015, ¶ 14 ("Regarding gifts between spouses, the donee has the burden of showing by clear and convincing evidence that the donor made the intervivos gift with the intention of waiving all rights and interest he/she may have had in the gift items as martial property."). In general: "The essential elements of an inter vivos gift are (1) an intention on the part of the donor to transfer the title and right of possession to the donee, (2) delivery by the donor to the donee, (3) relinquishment of ownership, dominion, and control over the gift by the donor, and (4) acceptance by the donee." *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 20, citing *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 26-27, 4 N.E.2d 917 (1936).

{¶18} Nevertheless, the key issue in the cases of property division is donative intent, which includes a consideration of various circumstances. *Hippely*, 7th Dist. No. 01 CO 14 at ¶ 14. As the husband points out, there are cases finding a lack of donative intent where one spouse testified to adding the other spouse's name to premarital realty in order to provide for their children in the case of the first spouse's death. *See Sweeney v. Sweeney*, 9th Dist. No. 19709 (June 21, 2000). *See also Howcroft v. Howcroft*, 192 Ohio App.3d 307, 2010-Ohio-6410, 949 N.E.2d 46, ¶ 88 (5th Dist.) (reversing the trial court and finding no gift where the husband testified he made the transfer of the property for estate-planning purposes so the wife would have a future expectancy interest in the property, as opposed to a present possessory interest, and where the wife failed to meet her burden to show the

husband's donative intent); *Smith v. Smith*, 5th Dist. Nos. CT2003-0008, CT2003-0020, 2004-Ohio-408, ¶ 33-34 (affirming the trial court's holding that the wife failed to show the husband's donative intent when the wife's name was placed on deeds for property he bought by trading his separate property).

**{¶19}** There are also cases finding clear and convincing evidence of donative intent, including a case by this court. *See Hippely*, 7th Dist. No. 01 CO 14 at ¶ 19-23. *See also Helton v. Helton*, 114 Ohio App.3d 683, 687-88, 683 N.E.2d 1157 (2d Dist.1996) (concluding the husband intended to convey a present possessory interest in his separate property when he executed a joint and survivorship deed to himself and his wife, even though the purpose of the conveyance was to further the avoidance of taxes or probate expense). Nevertheless, upholding a trial court judgment in one case does not require reversal of an opposite trial court judgment in another case.

**{¶20}** The wife posits there is donative intent if a spouse transferred his interest in real property for a specific purpose other than ownership, such as to avoid a creditor. *See Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 73. We note the *Wolf-Sabatino* case dealt with one spouse transferring the property *from joint ownership to sole ownership* in order to protect the grantor's assets from creditors; it also involved a prenuptial agreement. Furthermore, the statement relied upon by the wife here was made by the Tenth District in determining whether the wife presented any evidence on the husband's donative intent; the court then remanded for *the trial court* to determine whether the husband gifted the wife his half of the marital home. *Id.* at ¶ 71, 75. The court did not conclude the husband had donative intent due to his admission of intent to avoid attachment of the house by his business creditors.

**{¶21}** It is our *Hippely* case that is more on point. This court's *Hippely* case suggested a similar position, stating the desire to avoid probate costs by executing the joint and survivorship deed indicates intent to gift an interest in real estate. *Hippely*, 7th Dist. No. 01 CO 14 at ¶ 21, citing *Wolf v. Wolf*, 2d Dist. No. 96CA10 (Sept. 27, 1996). Yet, a strict interpretation of the cited observation would seem to

eviscerate R.C. 3105.171(H), which states: "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property."

**{¶22}** This statute changes the effect of the names on a deed for purposes of a domestic relations court distributing a couple's marital and separate property. A strict reading of the cited holdings would mean: if the purpose is ownership, then there is a gift; and, if the purpose is something other than ownership, then *there is still a gift.* This would mean only the accidental adding of a spouse to a deed is subject to R.C. 3105.171(H), i.e., such as a mistaken title (for instance, by an attorney without the grantor-spouse's permission) would allow the property to remain separate property. This is not what the statute states. In fact, a "flexible" test is recognized which considers the totality of the circumstances to ascertain whether separate property was gifted. *Hippely*, 7th Dist. No. 01 CO 14 at ¶ 18. *See also Wolf-Sabatino*, 10th Dist. No. 10AP-1161 at ¶ 66 (division (H) eliminates the presumption of a gift but does not preclude such a finding depending on the factual context).

**{¶23}** It must be remembered, in ascertaining the scope of a property award in a divorce decree, the appellate review is for an abuse of discretion. *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). This is also the standard in allocating marital and separate property prior to making the property division. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998). An abuse of discretion "is more than an error of law or judgment; it implies that the court acted in an unreasonable, arbitrary, or unconscionable fashion." *Middendorf*, 82 Ohio St.3d at 401, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 482, 450 N.E.2d 1140 (1983). "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." *Middendorf*, 82 Ohio St.3d at 401, citing *Ross v. Ross*, 64 Ohio St.2d 203, 414 N.E.2d 426 (1980).

**{¶24}** We do not review for whether we would have made the same decision on whether separate property was converted to marital property. We note the way the Ninth District framed their conclusion:

After reviewing the evidence, we cannot conclude that the trial court abused its discretion in finding that Mr. Sweeney did not have the requisite intent when he executed the deeds. Furthermore, without such an intent, we cannot conclude that the trial court erred in finding that no gift occurred, and hence, the residence was not converted to marital property by one spouse's gift to another.

*Sweeney*, 9th Dist. No. 19709.

**{¶25}** On the issue of whether the separate property changed to marital property by virtue of the joint and survivorship deed, this court concludes the trial court did not abuse its discretion. The husband owned the residence prior to the parties' 1983 marriage. His uncle deeded it to him in 1980. The property was not subject to a mortgage. More than ten years after they married, when the parties' children were approximately five and six years old, the husband executed a joint and survivorship deed adding the wife's name to the deed. He believed the deed meant if he died, then his wife would receive the full property interest, which he believed would protect his children who would live with her. (Tr. 70, 81).

**{¶26}** When asked why he executed the deed, he explained he did it "for the kids." (Tr. 70). He said he did not put the residence in the children's names because they were minors. (Tr. 82). He "wanted to make it easier on the kids so if anything happened they wouldn't go through the whole extra * * * problems" explaining he "understood that it just meant that there would be less court proceedings to that nature." (Tr. 70, 81). He said if he did not execute the deed, he believed the residence "probably would go into probate or some type of legal action." He concluded "the intention was to make sure that the kids wouldn't have any problems and they would be secure." (Tr. 82). "I wanted to make sure that it wouldn't go through any extra proceedings, you know, or problems for the family." (Tr. 85). It is the province of the trial court to find his testimony believable.

**{¶27}** The wife confirmed she thought one reason he added her name to the deed was "because the kids, you know, were there and if something happened to him maybe he wanted, you know, me to have the house at that time." (Tr. 23). She said

he told her he added her name to the property after he did so. (Tr. 23). When asked whether she had a discussion with her husband about adding her name to the deed, the wife disclosed she voiced a concern about his name being the same as his father's name. She even advised him they should get a tenant's policy in case the name on the deed was thought to refer to his father. (Tr. 22).

**{¶28}** This additional motivation (clarifying ownership amongst identically named relatives, e.g., the Robert A. Mass who is married to Denise Mass) distinguishes the case from this court's *Hippely* case. Additionally, the question is donative intent, not intent to avoid probate. Intent to avoid probate or conduct estate planning is not necessarily equivalent to donative intent to gift the other spouse an interest in separate property. The pertinent domestic relations statute excepts the titling of property between spouses from the regular rules governing deeds.

**{¶29}** Where the review is for abuse of discretion, similar cases can produce opposing results, either one of which could be upheld as being reasonable. *Hippely* was a decision to leave undisturbed the trial court's discretion on a factual matter, as opposed to a legal holding. This position is supported by the concluding statement: "Regardless of his statements, the trial court did not abuse its discretion. Competent credible evidence existed to prove that it was Charles' intent to give Patricia a present possessory interest in the real estate." *Hippely*, 7th Dist. No. 01 CO 14 at ¶ 22. "[I]t is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce." *See Cherry v. Cherry*, 66 Ohio St.2d 348, 355, 421 N.E.2d 1293 (1981). And, the pertinent statute does not set forth a hard and fast rule. *See* R.C. 3105.171(H). In sum, there is no absolute rule on this topic, and a spouse's desire to avoid probate does not per se mean there was donative intent when adding the other spouse's name to the deed. The trial court's decision finding the husband lacked donative intent is upheld. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: SPOUSAL SUPPORT</u>

**{¶30}** The wife's second assignment of error contends:

"THE TRIAL COURT ERRED BY DENYING THE APPELLANT'S REQUEST FOR SPOUSAL SUPPORT."

**{¶31}** Upon request of a party, spousal support is considered after the property division is made. R.C. 3105.18(B). The trial court's decision on the amount and duration of spousal support cannot be reversed absent an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion connotes more than an error in judgment; it implies the trial court's judgment is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The appellate court cannot substitute its judgment for that of the trial court on matters of spousal support. *Id.* at 218-219.

**{¶32}** In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms, and duration of spousal support, the court shall consider all of the following factors: (a) the parties' income from all sources, including income derived from property already divided; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the parties' retirement benefits; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a party to seek employment due to being custodian of the parties' minor child; (g) the standard of living established during the marriage; (h) the parties' relative education levels; (i) the relative assets and liabilities of the parties, including any court-ordered payments; (j) the contribution of each party to the education, training, or earning ability of the other party; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience to obtain appropriate employment, provided the education, training, or job experience, and employment is in fact sought; (l) the tax consequences of a spousal support award; (m) any lost income production capacity due to marital responsibilities; and (n) any other factor the court expressly finds relevant and equitable. R.C. 3105.18(C)(1).

**{¶33}** "In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income." R.C. 3105.18(C)(2). The trial court must consider all the factors listed in R.C. 3105.18 and not base its determination upon any one of those factors taken in isolation. *Kaechele*

*v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988). The trial court must indicate the basis for an award of spousal support in sufficient detail to enable a reviewing court to conduct its review. *Id.* at 97.

{¶34} The wife argues the court did not consider all of the factors but instead ruled based on the fact that the husband's pension was in payout status and the wife was already awarded half of the agreed value of the pension. She notes the court must consider the husband's income from retirement benefits even if it is derived from assets already distributed as marital property, citing R.C. 3105.18(C)(1)(a). The wife states she will exhaust the amount she received in lieu of splitting the monthly pension checks in a matter of years as her monthly expenses exceed her income. Although her rent for an apartment (which is the same size as the house) is only $650 per month, she testified her monthly expenses are $2,200 to $2,700. (Tr. 37).

{¶35} The wife emphasizes: the long-term marriage of 32 years; her age of 60 (stating she was too young for Social Security); the husband was the primary breadwinner during the marriage; the husband was in a better financial situation; she had to rent an apartment, while he had no mortgage; and there was a disparity in incomes. The wife's brief states she makes $18,000 by working full-time and she was employed to capacity. We note her testimony described her current employment as selling insurance part-time at the same agency where she previously worked full-time; still, it appears she works 35-36 hours per week. (Tr. 25-27, 48). The wife's brief also states she stayed home with the children until 2003 when she began working full-time. We note she testified she began working full-time in 2003 but started working part-time five years prior to this for the same employer. (Tr. 27). There was no claim her current income capacity was lower due to her marital responsibilities or that she anticipated needing time and expense to get qualified for a job. The wife's brief also states she had no health insurance after the divorce and no means of paying for a private policy. However, she testified her employer would provide her with a basic health insurance policy at no charge. (Tr. 41-42). Her brief states the husband had separate property, but she had no separate property. We

note the wife testified she owned some premarital bonds, but she did not disclose their value.

**{¶36}** Contrary to the wife's suggestion, the court did review the pertinent factors. The court's entry overruling the wife's objections cited to the magistrate's review of the factors contained in R.C. 3105.18(C)(1), which would include (a) through (n). Although the court need not comment on each individual factor in its judgment entry (but must provide the underlying basis to allow for review on appeal), the entry here did comment on each factor. *See, e.g., Miller v. Miller*, 7th Dist. No. 08 JE 26, 2009-Ohio-3330, ¶ 142, citing *Kaechele*, 35 Ohio St.3d at 96-97.

**{¶37}** The magistrate's decision (signed and later adopted by the trial court) set forth individual findings on each statutory spousal support factor in R.C. 3105.18(C)(1)(a)-(n) and recited the consideration in (C)(2). For instance, the decision set forth: (a) incomes and sources; (b) the wife said she could make more if she worked full-time, and the husband is retired; (c) both parties were 60 years old, the wife had breast cancer 18 years ago (which was successfully treated), and the wife was diagnosed with multiple sclerosis (which was in remission); (d) retirement benefits; (e) the parties were married thirty-two years; (f) the children were emancipated; (g) the parties had a good standard of living with little debt; (h) the wife's education level was a high school graduate; (i) expenses of the parties, the husband's inheritance, and the even split of corporate shares of stock they owned and marital accounts; (j) no evidence was presented as to the contribution of either to the education or training of the other; (k) there was no evidence on plans to seek additional education or training; (l) the wife would have to pay taxes on any spousal support; (m) the wife stayed home with the parties' children for a time and entered the workforce in 2003; and (n) the wife asked for $1,500 per month for life.

**{¶38}** Contrary to the wife's position, the court did consider the husband's income from retirement benefits including those derived from assets already distributed as marital property as instructed by R.C. 3105.18(C)(1)(a). The court specifically stated the husband's income was $52,000 per year from retirement accounts and the wife's was $18,000 from part-time employment selling insurance.

Part of the husband's income was from monthly Deferred Compensation payments of $700. This was being evenly divided due to the parties' agreement on property division, meaning the wife's annual income from employment would be supplemented by the amount she would receive from this account each month (and his income would decrease).

**{¶39}** The court noted the husband's separate property inheritance of $250,000 had been somewhat diminished due to the cash he paid the wife under the agreed property division for her share of his pension and two parcels of land. He used a portion of his separate inheritance to assist the parties' children, spending over $50,000 to pay off their daughter's college loans and to provide their son with a down payment on a house. He also used over $7,000 of his separate inheritance to pay off the loan on the Cadillac which was awarded to the wife in the property division, leaving the parties with no marital debt.

**{¶40}** The court can consider the factors listed in R.C. 3105.18(C)(1) along with all other factors expressly found relevant. R.C. 3105.18(C)(1)(n). The *totality* of the circumstances must be considered to determine whether the trial court acted unreasonably, arbitrarily or unconscionably. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). There are no prohibited financial considerations. The statute does not require the court to ignore the fact the wife could have received monthly pension checks through a QDRO, which could have reduced the husband's total income to an amount lower than her income, but she agreed to a cash payment in lieu of receiving payments from OPERS.[5] In fact, one of the statutory factors involves the assets of the parties, including court-ordered payments. R.C. 3105.18(C)(1)(i). Here, the payment was by virtue of the parties' agreement, which was adopted as an order of the court. We note her Social Security eligibility may have been a motivation for this arrangement; another motivation may have been the

---

[5] In other words, an agreement was entered prior to trial to divide the pension, thus removing said division from the court's consideration. Then at the trial on spousal support, the wife used the fact of the husband's unreduced monthly checks to argue there was a disparity in their incomes and now suggests the court cannot consider that, instead of receiving monthly checks under a QDRO, she took a cash settlement (made from the husband's separate property inheritance).

option chosen when the pension began payout (and concern he may die before she received as much as her cash settlement). It was observed how the monthly pension checks were taxable, but her cash payout was not. The wife was 60 and testified she could receive $600 per month in Social Security at age 62 or $1,200 per month at age 65. She was a long-time employee, and her job appeared stable. The husband was retired and would not be eligible for Social Security.

**{¶41}** Recognizing the trial court's broad discretion, this court affirms the trial court's decision on spousal support. Considering the totality of the circumstances, we cannot say the trial court abused its discretion in denying the wife's request for spousal support. The court considered the pertinent factors and determined spousal support was not appropriate. This assignment of error is overruled.

**{¶42}** The trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.